UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------
ELBA M. VIERA LOPEZ,

                             Plaintiff,

               -v-

BAYVIEW LOAN SERVICING, LLC, *et al.*,

                             Defendants.
---------------------------------------------------------------

16-CV-2610 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

    Plaintiff Elba M. Viera Lopez, proceeding *pro se*, brings this action against Bayview Loan Servicing, LLC ("Bayview") and Bank of New York Mellon ("Bank of New York"). Lopez's claims arise out of a mortgage loan executed in 2006 and subsequently assigned to Defendants. In her Second Amended Complaint ("the Complaint"), Lopez alleges that the assignment of her mortgage loan was invalid; that Defendants hold no interest in her mortgage loan; that Defendants have no right to foreclose on the property; and that Defendants have, *inter alia*, violated the Fair Debt Collection Practices Act, the Consumer Credit Protection Act, the Truth in Lending Act, federal consumer protection regulations, New York law, and Connecticut law. (Dkt. No. 29 ("Compl.").) Defendants now move to dismiss. (Dkt. No. 32.) For the following reasons, the motion is granted.

**I.    Background**

    The following facts are taken from the Complaint and its attached exhibits. On February 3, 2006, Lopez obtained a $340,000 loan from Silver Hill Financial, LLC. (Dkt. No. 36-1.) Lopez executed a promissory note in favor of Silver Hill, secured by a mortgage on her Bridgeport, Connecticut home. (*Id.*) Several weeks later, on February 21, 2006, Silver Hill assigned the mortgage to Defendant Bayview. (Dkt No. 36-3.) At some later point in 2006,

1

Lopez's loan was pooled and securitized into the Bayview Commercial Asset Trust 2006-1 ("the Trust"), for which Defendant Bank of New York is the trustee. (Dkt. No. 29-1 at 1.)

Lopez fell behind on her mortgage payments in 2012, and Bayview commenced foreclosure proceedings in Connecticut state court in 2013. (Dkt No. 36-4.) After granting summary judgment in favor of Bayview, the state court dismissed the foreclosure action for failure to prosecute. (Dkt Nos. 36-5, 36-6.) In 2014, Lopez transferred the property to her nephew, Jawan Bey, via quitclaim deed. (Dkt Nos. 36-7, 36-8.) Bayview commenced a new foreclosure action in Connecticut state court in 2015. (Dkt. No. 36-9.) That action remains pending today.

Lopez filed this action on April 7, 2016. (Dkt. No. 1.) Lopez's allegations fall into three categories. First, Lopez alleges that the mortgage loan was improperly made because Silver Hill failed to conduct the appropriate due diligence and failed to inform her that the loan was funded through a "warehouse line of credit." (Compl. ¶¶ 13–14, 20, 31–35.) Second, Lopez alleges that the note and mortgage were improperly assigned to Defendants because, *inter alia*, the assignment was made after the Trust's closing date, violated the Trust's Pooling and Service Agreement ("PSA"), and violated assorted federal laws. (Compl. ¶¶ 16–19, 22–29, 37–58.) Third, Lopez alleges defects in the foreclosure proceedings because Defendants failed to provide the required notices under state and federal law and did not give her a full opportunity to modify her loan. (Compl. ¶¶ 21, 51, 59–92.) Based on these allegations, the Complaint seeks a declaration that Defendants lack an enforceable claim to the property, and also seeks compensatory damages, punitive damages, and costs.

Defendants filed the instant motion to dismiss pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 32.) Defendants argue that (1) Lopez lacks

constitutional standing because she has not alleged the requisite injury in fact; (2) Lopez lacks prudential standing to challenge the assignment of her loan because she was neither a party to the assignment contracts nor a beneficiary of the Trust; (3) Lopez fails to state a claim for violations of state or federal law; and (4) some of Lopez's claims are time-barred. (Dkt. No. 33.)

## II. Legal Standard

In all cases involving *pro se* plaintiffs, courts construe the complaint liberally and interpret the plaintiff's pleadings "to raise the strongest arguments they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (citation omitted). As a general rule, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "Even in a pro se case, however, 'although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (quoting *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009)).

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The "failure of subject matter jurisdiction is not waivable," and "[i]f subject matter jurisdiction is lacking, the action must be dismissed." *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700–01 (2d Cir. 2000). In resolving a motion to dismiss under Rule 12(b)(1), the court "must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir.

2014). "[T]he party who invokes the Court's jurisdiction bears the burden of proof to demonstrate that subject matter jurisdiction exists . . . ." *Germain v. M & T Bank Corp.*, 111 F. Supp. 3d 506, 518 (S.D.N.Y. 2015) (quoting *Gonzalez v. Option One Mortg. Corp.*, No. 12 Civ. 1470, 2014 WL 2475893, at *2 (D. Conn. June 3, 2014)).

To survive a motion to dismiss under Rule 12(b)(6), in contrast, "a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 128 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). In determining whether this standard is satisfied, courts assume that all "factual allegations contained in the complaint" are true, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 572 (2007) (quoting *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508 n.1 (2002)), and "draw all inferences in the light most favorable to the non-moving party[]," *In re NYSE Specialists Securities Litigation*, 503 F.3d 89, 95 (2d Cir. 2007) (Sotomayor, J.).

### III. Discussion

Lopez's allegations can be grouped into three broad categories: (1) allegations involving the execution of the loan, (2) allegations involving the assignment of the loan, and (3) allegations involving the foreclosure proceedings. Each category is addressed in turn.

#### A. Allegations Involving the Execution of the Loan

The Complaint alleges various improprieties in the creation of the mortgage loan. Lopez alleges that the loan "[was] underwritten without proper due diligence by non-party Silver Hill." (Compl. ¶ 13.) She further alleges that Silver Hill failed to verify Lopez's income through her

4

IRS filings; that Silver Hill used an improper index as the basis for the loan; and that Silver Hill "illegally, deceptively and/or otherwise unjustly, qualified [Lopez] for a loan which [Silver Hill] knew or should have known [Lopez] could not qualify for or afford." (Compl. ¶¶ 13–14, 31–35.) Lopez further alleges that she was "under the impression [that she was] being given a loan with negative amortization . . . but was lured into an unverified loan with a low starter rate" that she was unable to repay. (Compl. ¶ 20.)

The Complaint does not specify how the above allegations constitute a violation of any state or federal law. Moreover, all the above allegations involve the actions of Silver Hill, which is not a party to this action. Silver Hill originated the loan, but the Defendants in this action are the assignees of the loan, not Silver Hill. As a result, Lopez fails to state a legal claim based on the execution of her mortgage.

### B. Allegations Involving the Assignment of the Loan

Lopez further alleges that the assignment of the mortgage from Silver Hill to Bayview was unlawful. Lopez bases her claims on a "Forensic Audit" conducted in 2015 by Certified Forensic Loan Auditors, LLC. (Dkt. Nos. 29, 29-1.) The audit report states that "[Lopez's] Note and Mortgage have taken two distinctly different paths." (Dkt. No. 29-1 at 17.) Specifically, it concludes that the note was "sold, transferred, assigned and securitized into the Bayview Commercial Asset Trust 2006-1." (Dkt. No. 29-1 at 1.) It also alleges that the mortgage was assigned to the Trust after the Trust's closing date, and opines that, as a result, "the Assignment of Mortgage executed after the Trust's Closing Date would be a void act" because it "violated the express terms of the trust Instrument." (*Id.* at 17.) Though the audit report does not purport to give legal advice, it concludes that "[o]nce a loan has been securitized, which the [Lopez] loan may have been done [sic] many times, that event would indicate that the loan forever loses its

5

security component (i.e., the Mortgage), and the right to foreclose through the Mortgage is forever lost." (Dkt. No. 29-1 at 19.)

The Complaint's allegations can be hard to parse, but Lopez appears to allege that because the original mortgage was "table funded," the entity furnishing the funds—and not Silver Hill—owned the mortgage and the note. (Compl. ¶ 18.) And since Silver Hill did not own the mortgage, the Complaint alleges, it could not have assigned it to Bayview before the Trust's closing date. (*Id.* ¶¶ 16–19, 22–29.) Moreover, the Complaint alleges that "[Silver Hill] can only assign that which it has, and it did not have [Lopez's] Mortgage and Note in its possession because at closing Plaintiff's Note and Mortgage was Bifurcated at the inception of the Loan Agreement, and [Mortgage Electronic Registration Systems, Inc.] presumably had the Mortgage while [Bank of New York] presumably had the Note." (Compl. ¶ 22.) Finally, Lopez alleges that the assignment violated the Trust's PSA because neither Bayview nor Bank of New York "can claim that they are the Owner and Servicer, [respectively], for [Lopez's] Mortgage and Note[,] . . . resulting in imperfect security interests and claims." (Compl. ¶¶ 46–47.) The end result, the Complaint alleges, is that Defendants lack the power to foreclose on her property because they do not own the mortgage.

1. **Constitutional Standing**

The "irreducible constitutional minimum" of standing in federal court requires: (1) injury in fact, (2) that is fairly traceable to a defendant's challenged conduct, and (3) that is likely to be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). The Supreme Court clarified the injury-in-fact requirement in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), requiring that an injury must be "concrete and particularized." *Id.* at 1545 (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–181 (2000)).

6

As Defendants point out, the operative facts in this case mirror those in *Rajamin v. Deutsche Bank National Trust Co.*, 757 F.3d 79 (2d Cir. 2014), in which the Second Circuit held that a mortgage borrower lacked constitutional standing to challenge subsequent assignments. In *Rajamin*, several mortgage borrowers challenged the validity of a securitization assignment, arguing that it violated the assignment agreement and the PSA. *Id.* at 82–83. Like Lopez, the *Rajamin* plaintiffs sought to avoid foreclosure by arguing that the foreclosing party did not really own the mortgage because the assignment was defective. *Id.* at 85.

The Second Circuit held that there was no injury in fact, and thus no constitutional standing. The *Rajamin* court explained that even if the parties seeking payment "were not proper parties to receive and collect such payments," that alone "does not indicate an actual or imminent, rather than a conjectural or hypothetical, injury." *Id.* To satisfy the injury-in-fact requirement, the court held, the borrower must allege that allowing the assignee to collect on the debt would expose the borrower to duplicate collection proceedings or duplicate foreclosures. *Id.* In other words, as long as the borrower's obligations—and exposure to collection proceedings—do not change, the borrower does not suffer injury merely because a down-the-road assignment may have been faulty.

In the instant case, the only injury alleged in the Complaint is the "current wrongful foreclosure" pending in Connecticut state court (Compl. ¶ 52.), which, under *Rajamin*, is not enough to constitute injury in fact. The assignment between Silver Hill and Defendants did not injure Lopez because she does not allege that it affected her obligation to repay her debt. Here, as in *Rajamin*, "plaintiffs acknowledge that they took out the loans . . . and were obligated to repay them, with interest; and they have not pleaded or otherwise suggested that they ever paid defendants more than the amounts due, or that they ever received a bill or demand from any

7

entity other than defendants. Thus, there is no allegation that plaintiffs have paid more than they owed or have been asked to do so." *Id.* Here, as in *Rajamin*, Lopez "acknowledge[s] . . . that [she was] declared in default on [her mortgage], and that foreclosure proceedings were instituted by [the assignee], claiming to own [the mortgage]," and "there was no allegation of any threat or institution of foreclosure proceedings against [Lopez] by any entity other than defendants." *Id.* Since there appears to be no dispute between Defendants and Silver Hill as to the propriety of the assignment, Lopez does not demonstrate that she has suffered, or would ever suffer, injury or damages in the form of double loan payments, competing claims, or duplicate foreclosures.

Accordingly, as in *Rajamin*, the Complaint fails to allege injury in fact sufficient to satisfy constitutional standing. Multiple other courts in this district, relying on *Rajamin*, have reached the same result in nearly identical cases. *See Joy v. US Bank*, No. 15 Civ. 9015, 2017 WL 1321010 (S.D.N.Y. Mar. 29, 2017); *Cox v. Nationstar Mortg. LLC*, No. 15 Civ. 9901, 2016 WL 3926467 (S.D.N.Y. July 18, 2016); *Springer v. U.S. Bank Nat'l Ass'n*, No. 15 Civ. 1107, 2015 WL 9462083 (S.D.N.Y. Dec. 23, 2015); *Le Bouteiller v. Bank of N.Y. Mellon*, No. 14 Civ. 6013, 2015 WL 5334269 (S.D.N.Y. Sept. 11, 2015); *Tran v. Bank of N.Y.*, No. 13 Civ. 580, 2014 WL 1225575 (S.D.N.Y. Mar. 24, 2014), *aff'd*, 592 F. App'x 24 (2d Cir. 2015).

2. **Prudential Standing**

As in *Rajamin*, "[e]ven if plaintiffs had Article III standing . . . they lack prudential standing." *Rajamin*, 757 F.3d at 86. "The 'prudential standing rule . . . normally bars litigants from asserting the rights or legal interests of others in order to obtain relief from injury to themselves." *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 509 (1975)). "[T]he plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth*, 422 U.S. at 499. In *Rajamin*, the Second Circuit held

8

that the borrowers could not assert claims based on New York breach-of-contract law or breach-of-trust law because they were neither a party to the assignment contract or PSA nor a beneficiary of the trust. *Rajamin*, 757 F.3d at 86–90.

The result is the same in the instant case. Importantly, Lopez does not allege that the assignment was a violation of *her* mortgage or promissory note. Indeed, the mortgage agreement between Lopez and Silver Hill explicitly provides that "Lender may, at any time, sell, transfer, or assign the Note, this Security Instrument and the Other Security Documents, and any or all servicing rights with respect thereto." (Dkt. No. 36-2 at 13.) Lopez alleges only that the assignments violated the rights of others—namely the parties to the assignment contracts, the beneficiaries of the Trust, and perhaps the buyers of the securitized instruments.

As in *Rajamin*, the Trust appears to be governed by the New York Estates, Powers and Trusts Law ("EPTL"),[1] and Lopez's claims turn on New York law. (Compl. ¶¶ 3, 7, 9, 19, 44, 49–50.) Under New York law, "the terms of a contract may be enforced only by contracting parties or intended third-party beneficiaries of the contract." *Rajamin*, 757 F.3d at 86; *see also Bank of N.Y. Mellon v. Gales*, 982 N.Y.S.2d 911, 912 (N.Y. App. Div. 2d Dep't 2014) (holding that the borrower "did not have standing to assert noncompliance with the subject lender's pooling service agreement" as a defense to foreclosure). The *Rajamin* court held that "[a]lthough noncompliance with PSA provisions might have made the assignments

---

[1] In her brief, Lopez argues that Connecticut law should apply because "the underlying mortgage loan transaction, its wrongful foreclosure, and [other claims of statutory violations] all occurred in Connecticut." (Dkt. No. 38 at 2.) Nevertheless, the question of whether the assignment was unlawful—and, more importantly, whether the Complaint's pleadings are sufficient to withstand a motion to dismiss—turns on New York law, as the allegations in the Complaint explicitly rely on New York common law and New York trust law. (*See* Compl. ¶¶ 3, 7, 9, 19, 44, 49–50.) In any event, the result would likely be the same under Connecticut law. *See Bank of N.Y. Mellon v. Bell*, No. 11 Civ. 1255, 2014 WL 7270232, at *7 (D. Conn. Dec. 18, 2014).

unenforceable at the instance of parties to those agreements . . . plaintiffs were not parties to the assignment agreements [and] have not shown that the entities that were parties to those agreements intended that plaintiffs—whose financial obligations were being bought and sold—would in any way be beneficiaries of the assignments." *Rajamin*, 757 F.3d at 87.

As in *Rajamin*, Lopez does not allege that she was a beneficiary of the assignment contract or the PSA. For that reason, as held by several other courts in this district, Lopez lacks standing to enforce the agreements to which she was neither a party nor an intended beneficiary. *See Joy*, 2017 WL 1321010, at *2–3; *Cox*, 2016 WL 3926467, at *3; *Springer*, 2015 WL 9462083, at *5–6; *Le Bouteiller*, 2015 WL 5334269, at *6; *Tran*, 2014 WL 1225575, at *4–5.

The result is the same for Lopez's breach-of-trust claim, which likewise mirror the claims in *Rajamin*. First, Lopez's breach-of-trust theory is predicated on her breach-of-contract claim, which, as noted above, she lacks standing to assert. *Rajamin*, 757 F.3d at 87–88. Second, "under New York law, only the intended beneficiary of a private trust may enforce the terms of the trust." *Id.* at 88 (collecting cases); *Tran*, 2014 WL 1225575, at *3 ("New York courts interpreting the EPTL consistently hold that litigants who are not beneficiaries of a trust lack standing to enforce the trust's terms or to challenge the actions of the trustee."); *In re Estate of McManus*, 47 N.Y.2d 717, 719 (1979) ("Inasmuch as appellants and their predecessors in interest were not beneficially interested in the trust . . . they lack standing to challenge the actions of its trustee."). Other courts in this district, relying on *Rajamin*, have reached the same conclusion in similar cases. *See Joy*, 2017 WL 1321010, at *2–3; *Cox*, 2016 WL 3926467, at *3–4; *Springer*, 2015 WL 9462083, at * 5–6; *Le Bouteiller*, 2015 WL 5334269, at *6–7; *Tran*, 2014 WL 1225575, at *3–4.

Lopez's argument rests primarily on *Springer v. U.S. Bank National Ass'n*, No. 15 Civ. 1107, 2015 WL 9462083 (S.D.N.Y. Dec. 23, 2015), but *Springer* differs from the instant case in one crucial respect. In *Springer*, as here, a *pro se* plaintiff sought to avoid foreclosure by arguing that the assignment of his loan was unlawful. Relying on *Rajamin*, the district court in *Springer* dismissed most of the allegations, holding that the plaintiff lacked constitutional and prudential standing to assert breach-of-contract or breach-of-trust claims in connection with the assignment of the loan. *Id.* at *3–6. The only two claims that the *Springer* court declined to dismiss alleged that the assignment of the loan violated the original promissory note *between the plaintiff and his lender*, as opposed to an agreement between the lender and a third party. *Id.* at *6–8. The *Springer* court distinguished *Rajamin* because, unlike *Rajamin*, "[t]he rights Springer seeks to assert under the [the non-dismissed claims] are under the deed of trust and promissory note, not under the Prospectus or PSA." *Id.* at *8. In other words, the plaintiff had standing because he was a party to the contract that was allegedly breached.

In contrast to *Springer*, Lopez does not allege that the assignment violated the note or mortgage to which she was a party. She alleges only that the assignment violated the PSA and the terms of the Trust, neither of which included her as a party or beneficiary.[2] Indeed, as discussed above, Lopez's mortgage agreement expressly provides that the loan is freely assignable. For that reason, there is no basis to distinguish this case from the controlling precedent in *Rajamin*. *See Joy*, 2017 WL 1321010, at *3 n.9 (rejecting the plaintiff's reliance on

---

[2] The Complaint contains a passing reference that "[t]he lack of proper assignment. . . violate[d] the terms of the Promissory Note" (Compl. ¶ 49), but the Complaint provides nothing beyond this conclusory statement. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

*Springer* and making the same distinction). Since Lopez lacks constitutional and prudential standing to challenge the assignment of her loan, Counts One and Two are dismissed.

### 3. Truth in Lending Act Claims

Lopez next alleges that Defendants violated the Truth in Lending Act ("TILA") by failing to notify her when her mortgage was assigned to Bayview and securitized into the Trust. The Complaint asserts that "Defendant(s) . . . were required to disclose the assignment or transfer of the Note and [mortgage] each and every time that they were assigned or transferred," and that "[Defendants] failed to disclose the purported assignment and/or transfer of the Note." (Compl. ¶¶ 60–61.)

Defendants point out, correctly, that TILA's one-year statute of limitations has long passed, since the purported assignment and securitization took place in 2006. *See* 15 U.S.C. § 1640(e). The Complaint tries to get around the statute of limitations problem by alleging fraudulent concealment by Defendants, but it provides no facts or details beyond a conclusory allegation that "the non-disclosure of the purported assignments shows a pattern and practice of defendants . . . skirt[ing] the TILA requirements." (Compl. ¶ 64.) "A plaintiff seeking to toll the applicable statute of limitations due to fraudulent concealment of a violation by a defendant ordinarily must meet the particularity standard of [Federal Rule of Civil Procedure] 9(b)," which requires that in alleging fraud, a party must state with particularity the circumstances constituting fraud. *In re Nat. Gas Commodity Litig.*, 337 F. Supp. 2d 498, 513–14 (S.D.N.Y. 2004); *see also Fraser v. Aames Funding Corp.*, No. 16 Civ. 448, 2017 WL 564727, at *6 (E.D.N.Y. Jan. 24, 2017), *report and recommendation adopted sub nom. Fraser v. Deutsche Bank Nat'l Trust Co.*, No. 16 Civ. 448, 2017 WL 563972 (E.D.N.Y. Feb. 10, 2017) (dismissing plaintiff's TILA claim

as barred by the one-year statute of limitations and rejecting an equitable tolling defense). As the Complaint provides no such particulars, Count Three is dismissed.

### 4. Consumer Credit Protection Act Claims

Lopez's final claim as to the assignment of the loan is that "Defendants violated the [Consumer Credit Protection Act] by failing . . . to disclose the purported assignments/transfer of the Promissory Note and [mortgage]." (Compl. ¶ 74.) However, the Complaint provides nothing more than this single conclusory statement and a block quote from the United States Code. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Accordingly, Count Five is dismissed.

### C. Allegations Involving the Foreclosure Process

The final category of allegations concern Defendants' conduct leading up to the foreclosure of Lopez's home. Specifically, the Complaint alleges that Defendants violated federal and state law because they inadequately responded to her requests for modification.

### 1. National Homeowners' Bill of Rights

Count Four of the Complaint alleges violations of "the National Homeowners' Bill of Rights." (Compl. ¶¶ 67–71.)[3] This is an apparent reference to H.R. 4963, 113th Cong. (2014), a bill introduced by New Mexico Congresswoman Michelle Lujan Grisham. However, this bill

---

[3] Count Four mislabels the defendant as "Nationstar Mortgage Servicing, LLC," which is not a party to this action. In her brief, Lopez argues that this was a typographical error and that Bayview should be substituted for Nationstar. (Dkt. No. 38 at 6–7.) The Court gives Lopez the benefit of the doubt and inserts Bayview as the defendant in Count Four.

was never voted on, let alone enacted into law.[4]  Accordingly, Lopez's claims under the bill are dismissed.

### 2. Connecticut Homeowner Protection Bill

Count Four of the Complaint also alleges violations of "the Connecticut Homeowner's Protection Bill," which has been enacted into law.  *See* Conn. Gen. Stat. § 49-31*l*.  However, the Complaint fails to cite any of its provisions or allege any specific conduct violating this state law.  The Complaint states that "[Bayview] violated . . . [the Connecticut Homeowner Protection Bill] in the following ways" (Compl. ¶ 70), but all of its subsequent allegations relate to the National Homeowners' Bill of Rights, which, as discussed above, never became law.  Accordingly, the Complaint fails to state a claim under Connecticut law and Count Four is dismissed.

### 3. RESPA Claims

Count Six of the Complaint alleges that Defendants violated 12 C.F.R. § 1024.41, promulgated pursuant to the Real Estate Settlement Procedures Act ("RESPA").  This regulation imposes notification and mitigation requirements on servicers of home mortgages.  Lopez's claim is supported by three factual allegations.  First, the Complaint alleges that "[Defendants] did not act affirmatively to complete [Lopez's] Loan Modification application and did not exercise reasonable diligence to obtain any documents/information to complete the application." (Compl. ¶ 83.)  Second, the Complaint alleges that "[Defendants] did not send [Lopez] a notice acknowledging that [Lopez's] Loan Modification application was complete within five days of receipt of the application and did not provide a written notice to [Lopez] describing the

---

[4]  *See* H.R. 4963 - National Homeowners Bill of Rights Act of 2014, https://www.congress.gov/bill/113th-congress/house-bill/4963/text.

14

documents and information needed to complete the application." (Compl. ¶ 86.) And third, the Complaint alleges that "[Defendants] did not (1) provide the written notice outlined in [12 C.F.R. § 1024.41], and (2) did not provide a reasonable date from the Bank by which the borrower should submit the missing documents and information." (Compl. ¶ 89.)

Lopez's RESPA claim is fatally deficient because the Complaint does not allege any details beyond reciting the applicable law and the three conclusory allegations above. "To plead a claim under the RESPA, plaintiff must offer proof either by attaching the letter or pleading with specificity such facts—such as when the letter was sent and to whom it was directed, why it was sent, and the contents of the letter—that the Court may determine if the letter qualifies as a [a notice under RESPA]." *Kilgore v. Ocwen Loan Servicing*, LLC, 89 F. Supp. 3d 526, 538 (E.D.N.Y. 2015). The Complaint does not provide such details. For example, Lopez alleges that Defendants failed to respond to her in a timely manner, yet the Complaint does not mention when, if at all, Lopez submitted any applications for loss mitigation. *See Miller v. HSBC Bank U.S.A.*, No. 13 Civ. 7500, 2015 WL 585589, at *10 (S.D.N.Y. Feb. 11, 2015) (dismissing a RESPA claim where plaintiff made "a conclusory allegation that she sent a [qualified written request] to [the defendant] and that she suffered damages based on [the defendant's] alleged non-responsiveness"); *Blanchard v. Northway Bank*, No. 13 Civ. 119, 2013 WL 1775460, at *2 (D.N.H. Apr. 25, 2013) (holding that a RESPA claim which failed to attach the alleged request by the debtor or provide any factual allegations describing the request's contents constitutes "nothing more than the type of 'label or conclusion' the Supreme Court has held to be insufficient to state a claim for relief" (citing *Twombly*, 550 U.S. at 555)).

Lopez's RESPA claim is also deficient in alleging damages. "[T]o survive a motion to dismiss a plaintiff bringing a RESPA claim must, in addition to showing defendant's failure to

15

comply with the provisions, identify damages that he or she sustained as a result of defendant's alleged violation(s)." *Kilgore*, 89 F. Supp. 3d at 539. The statutory provision creating a cause of action for RESPA claims requires that the plaintiff sufficiently allege one of two types of damages: (1) "actual damages to the borrower as a result of the failure" to comply with § 2605, or (2) statutory damages "in the case of a pattern or practice of noncompliance with the requirements" of the statute. 12 U.S.C. § 2605(f); *see also In re Griffin*, No. 10-22431, 2010 WL 3928610, *4 (Bankr. S.D.N.Y. Aug. 31, 2010) ("[T]he courts have consistently dismissed complaints under RESPA if they do not allege actual damages or state merely that in a conclusory fashion the defendant caused damages to the plaintiff."). The Complaint does neither, alleging only that "[Bayview's] unlawful conduct has caused [Lopez] damages in an amount to be proven at trial." (Compl. ¶ 92.) Accordingly, Count Six is dismissed.

**D.  Leave to Amend**

In her brief, Lopez requests leave to amend "[i]n the event the Court determines that any cause of action should be dismissed." (Dkt. No. 38 at 7.) After considering this request, and in light of Lopez's multiple opportunities to adequately plead her case, the Court denies leave to amend.

Lopez filed the initial complaint in this action on April 7, 2016. (Dkt. No. 1.) On April 20, 2016, this Court ordered Lopez to amend the complaint because it was "insufficient to state a plausible claim for relief." (Dkt. No. 3 at 3.) After Lopez failed to file an amended complaint within the allotted time, the Court dismissed the case. (Dkt. No. 11.) Lopez then filed a motion seeking an extension, which this Court granted as a motion to reopen the case and a motion for an extension of time to file an amended complaint. (Dkt. No. 13.) Lopez then filed an amended complaint on August 8, 2016 (Dkt. No. 19), and Defendants, in turn, filed a motion to dismiss,

(Dkt. No. 21). Lopez next filed another motion asking for leave to amend. (Dkt. No. 26.) The Court again granted that motion, but noted that "the Court is not inclined to grant further extensions or leave to amend absent compelling reasons." (Dkt. No. 28 at 2.) Yet, after multiple opportunities, the latest iteration of Lopez's complaint still fails to state a valid claim.

The Court is sympathetic to Lopez's predicament as she tries save her home from foreclosure. Nevertheless, she has not stated any claims that merit intervention by the federal courts. Several other courts in this district, on nearly identical facts, have similarly denied leave to amend after granting motions to dismiss. *See e.g.*, *Cox*, 2016 WL 3926467, at *4; *Le Bouteiller*, 2015 WL 5334269, at *11.

## IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss is GRANTED, and the Complaint is dismissed in its entirety with prejudice.

The Clerk of Court is directed to close the motion at Docket Number 32 and to close this case.


SO ORDERED.

Dated: August 8, 2017
      New York, New York

_____
J. PAUL OETKEN
United States District Judge

*COPY MAILED TO PRO SE PARTY BY CHAMBERS*